

1

UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF FLORIDA

FORT MYERS DIVISION

BONITA ROSA,

     Plaintiff,

**COPY**

  vs.              CASE NO. 2:05-cv-481-FtM-29SPC

CITY OF FORT MYERS, FORT

MYERS POLICE DEPARTMENT,

DAVID MILLHORN (Officer),

CHRISTOPHER REIMAN (Officer),

     Defendants.

_____/

| | |
|---|---|
| DEPOSITION OF: | MELVIN L. TUCKER |
| DATE: | March 9, 2007 |
| TIME: | 9:00 A.M. to 1:17 P.M. |
| LOCATION: | Akerley/Associated |
| | 2275 Main Street |
| | Fort Myers, Florida |
| TAKEN BY: | Counsel for Defendant |
| BEFORE: | Irene C. Klein, RPR |
| | Notary Public |
| | State of Florida at Large |



RECEIVED
MAR 2 6 2007
CITY ATTORNEY'S
OFFICE

2

1  APPEARANCES:
2  On Behalf of the Plaintiff:
3          Law Offices of Samantha Stevins, P.A.
           Samantha Stevins, Esquire and
4          Cynthia Barthel, Esquire
           2656 Airport Road South
5          Naples, Florida  34112
           (239) 530-2233
6
7      On Behalf of Defendant City of Fort Myers:
8          City of Fort Myers
           City Attorney's Office
9          Grant Williams Alley, Esquire
           2200 Second Street
10         Fort Myers, Florida  33901
           (239) 332-6709
11
12     On Behalf of Defendant Officer Christopher Reiman:
13         Roosa, Sutton, Burandt & Adamski, L.L.P.
           Robert B. Burandt, Esquire
14         1714 Cape Coral Parkway
           Cape Coral, Florida  33904
15         (239) 542-4733
16
       Also Present:
17
           Pat Darley
18
                    -  -  -
19
20                INDEX OF EXAMINATION
21         By Mr. Alley - Page 4
22                  -  -  -
23
24
25

3

1                         INDEX OF EXHIBITS

2    DEFENDANT'S EXHIBITS:                                    PAGE

3    No. 1      CDs and DVDs                                     9

4    No. 2      Tucker Report #1                                15

5    No. 3      Tucker Report #2                                19

6    No. 4      Backup for Tucker's Second Report               30

7    Composite No. 5    Manila Folders                         182

8

9                              - - -

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

4

1                     MELVIN L. TUCKER,

2   called as a witness by the Defendant, having been

3   first duly sworn, as hereinafter certified, was

4   deposed and said as follows:

5                     EXAMINATION

6   BY MR. ALLEY:

7        Q.   Good morning, Mr. Tucker.  Will you please

8   state your full name and where you reside?

9        A.   My name is Melvin, M-E-L-V-I-N, middle initial

10  L, last name Tucker, T-U-C-K-E-R.  I live in Morristown,

11  Tennessee, 1505 Johnson Drive, Morristown, Tennessee

12  37814.

13       Q.   I understand you've been retained to give an

14  expert opinion in this case, is that correct?

15       A.   That is correct.

16       Q.   How did you become -- how did you get retained?

17       A.   I received a telephone call and was asked if I

18  would review materials and render opinions and I agreed

19  to do so.

20       Q.   Who did you receive that telephone call from?

21       A.   Just a moment, let me get out my correspondence

22  file, and I can tell you.

23            I received a phone call from Samantha Stevins.

24  I'm looking to see if I can find my original inquiry

25  sheet, but it looks like the first thing I have is that I

5

1   had an inquiry, because I invoiced her for my retainer on

2   April the 7th of 2006.

3        Q.   Looking at -- there's a letter from the Fort

4   Myers Police Department to Ms. Stevins.  What's the date

5   of that letter?

6        A.   That's the letter that is dated September 24th,

7   2004.

8        Q.   And is that something you reviewed in forming

9   an opinion?

10       A.   Well, it's something I reviewed.  Everything

11  that I brought today are all the materials that I was

12  told to bring under the subpoena duces tecum, all the

13  materials that I received.

14       Q.   And did you bring all those materials?

15       A.   I did.

16       Q.   And can you bring -- put them on the table

17  today -- on the table now?

18       A.   Everything?

19       Q.   Yes, please.

20       A.   Gladly.

21       Q.   Thank you.

22            Wow, that's a lot of stuff.

23            MS. STEVINS:  You asked for a lot of stuff.

24       A.   I still haven't unloaded yet.

25            MS. STEVINS:  Still got another bag.

6

1   BY MR. ALLEY:

2       Q.   I see you got my letter.

3       A.   That's it right there.

4       Q.   Okay, thank you.  So Samantha Stevins contacted

5   you, that's how you got involved in the case?

6       A.   That's correct.

7       Q.   And then did she send you written materials?

8       A.   Yes, she did.

9       Q.   And did you request those written materials or

10  did she send you what she believed you needed?

11      A.   Well, I think it's a combination of both.  I

12  have my report with the list of materials that I reviewed

13  that I provided to her and she's provided to you that I

14  received at first.  And of course, I requested the

15  deposition transcripts of officers involved whenever

16  those were taken, opposing expert, deposition testimony

17  in other matters as the case developed.

18      Q.   And was that outlined in your report as

19  Appendix C?

20      A.   It was.

21      Q.   Now, the one -- when you listed the Rule 26

22  disclosure on Appendix C, was that -- whose Rule 26

23  disclosure were you referring to?  When I read that I

24  couldn't tell.

25      A.   I don't know what you're talking about.

7

1    Q.   There's something about Rule 26 disclosure on

2    Appendix C.  Can I take a look at it real quick?

3         MS. STEVINS:  Actually I would ask that he just

4         give you the full report.  That way you have his

5         report and I think the appendix is attached, the

6         actual.

7         MR. ALLEY:  This will speed it up.

8         THE WITNESS:  Are you talking about a CD

9         containing information disclosures --

10   BY MR. ALLEY:

11   Q.   Thank you.  Yeah, that's what.  Can you just be

12   a little bit more detailed on that?  Do you recall whose

13   Rule 26 and what's on that CD?  Did you bring the CD with

14   you today?

15   A.   Yes, I forgot.  That's in here too.

16   Q.   Thank you.

17   A.   I brought all the CDs.

18   Q.   For that one, I'm just trying to figure out

19   which one.  On Appendix C you identified a CD that you

20   used to help form your opinion, is that correct?

21   A.   Everything that I reviewed went into the

22   development of my opinions, that's correct.

23   Q.   And I'm just trying to get an explanation of

24   what that CD is and what's on that CD.

25   A.   Well, I don't recall right now, because I would

8

1   assume it's discovery information regarding information

2   provided by Fort Myers regarding this incident, but I

3   don't recall right now.

4        Q.   Okay.  So that's a Rule 26 disclosure by the

5   City of Fort Myers?

6        A.   I think so, as I recall it.

7        Q.   Okay.  And it's not the Rule 26 disclosure

8   provided by the Plaintiff?

9        A.   I don't think so.

10       Q.   Okay.  Is it possible that you can identify --

11   I see a list of six CDs.  Is it possible you can identify

12   which CD that CD is that you referenced in your Appendix

13   C in forming your opinion?

14       A.   I took that right off of her letter, DVD

15   containing information disclosed in her cover letter, so

16   I would assume it's -- well, this is also marked 26A, so

17   I would assume that's part of the discovery.  I would

18   think those two CDs right there would be my guess, but

19   unless I reviewed them, and I don't have my computer set

20   up to review them, I can't tell you for sure.  Those two

21   CDs right there.

22            MR. ALLEY:  Okay.  Is there some way we can

23        mark these just so -- I just want to know what he --

24        I just want to be clear as to what his Appendix C

25        is.  I can understand everything on it except for

9

1      which CDs he was referring to.  So can we mark these

2      Defense Number 1, Appendix C please, these two CDs?

3          MS. STEVINS:  And those will be copied and

4      returned?

5          MR. ALLEY:  Yes.  Actually, I shouldn't answer

6      that.  Will those be copied and returned?

7          (Discussion off the record.)

8          (Defendant's Exhibit No. 1 was marked for

9      identification.)

10  BY MR. ALLEY:

11     Q.   I had sent you a letter indicating that I was

12  going to do that as a courtesy and maybe you didn't get

13  it in time.

14     A.   What was that?

15     Q.   I sent a letter just saying:  "Attach a copy of

16  Exhibit A to the Amended Notice of Deposition," that I

17  would be marking all of what you -- in honor of the

18  subpoena I'd be marking them.

19     A.   I received a fax of this, I believe.

20     Q.   I was just trying to -- I didn't want to take

21  your file away, but I also want to have it copied and

22  marked what's in honor of the subpoena.  So I was

23  thinking maybe you would have copied it, but that's okay.

24     A.   You mean made a copy of it for you?

25     Q.   Yeah.

10

1      A.   No, I didn't make a copy of anything for you.
2  I brought the file that I had as said in the subpoena and
3  that's what I provided here.

4      Q.   Okay.  And then in the letter that I sent to
5  you it just said -- asked you to "please insure that you
6  have in your possession at the time of the deposition all
7  documents listed in Exhibit A," and I'll be using these
8  documents as exhibits to your depo, because I want to
9  copy them and attach them as exhibits to your depo,
10 so....

11      Have you -- we received the report that details
12 your opinions and it indicates it's a preliminary report,
13 is that correct?

14      A.   That is correct.  At the time I submitted the
15 report, yes.

16      Q.   Have you formed all of the opinions that you
17 intend to render in this case?

18      A.   I have now.

19      Q.   And could you please elaborate on your answer?

20      A.   Well, I provided Ms. Stevins with the report of
21 my final opinions last night at 7:30 after I had reviewed
22 additional materials, and I brought it -- a list of what
23 I had reviewed in addition to the materials that I
24 reviewed for my preliminary opinions along with me here
25 today updated, and now I have developed my final opinions

11

1  in this case.

2      Q.   Mr. Tucker, what is your understanding of why

3  we're deposing you today?

4      A.   To make inquiry about the opinions I hold in

5  this case.

6      Q.   Do you realize there's an expense associated

7  with taking your deposition?

8      A.   Well, certainly.

9      Q.   Do you believe that we would like to have your

10 report prior to your giving your deposition?

11     A.   Well, I think that's -- you certainly would

12 like to, but I can only put the report together when I

13 can put the report together.  And I was provided with

14 materials to review and I have other cases that I'm

15 working on and I put my final report together on the 7th

16 in the evening of the 7th and I flew yesterday and I

17 provided it to Ms. Stevins last night and I brought a

18 copy along with it today for you.

19     Q.   And have you given us a copy of your report?

20     A.   I just got into town last night.  I gave it to

21 counsel that employed me and that's Ms. Stevins and I

22 assume she'll give you a copy of it.

23     Q.   So as you sit here today, you're fully aware

24 that you have issued another report, an additional

25 report, and that you're aware that defense counsel does

12

1    not have a copy of that report?

2        A.    I assume, unless she's given it to you.

3        Q.    I'm not asking you to assume.  I'm asking you

4    what you know.

5        A.    Well, I don't know whether she gave you a copy

6    of the report or not.  I gave her a copy of the report at

7    7:30 last night.  We haven't talked about it since then.

8    I just followed her here this morning and had a cup of

9    coffee and walked in here, so I don't know.

10       Q.    Did you receive a subpoena?  Did you receive a

11   subpoena on what you're supposed to do?

12       A.    Did I receive a subpoena?  Subpoena duces

13   tecum, that's correct.

14       Q.    Yeah.  And when did you receive your first

15   subpoena?

16       A.    You will have to clarify some things for me.

17   What subpoena are you talking about?  The first subpoena

18   I received was back December, and one time before when I

19   was scheduled to come down here for a deposition.

20       Q.    Do you feel that -- strike that.

21             How many reports have you rendered?  How many

22   reports have you rendered?

23       A.    How many reports have I rendered?

24       Q.    Yes.

25       A.    I rendered one report of preliminary opinions

13

1  which I submitted to Ms. Stevins, which I assume she

2  provided to you, and that was a report dated July the

3  3rd, 2006.  I was provided with additional materials and,

4  as I said in my report of preliminary opinions, that I

5  was classifying them as preliminary, because I was under

6  the understanding that I would be receiving additional

7  materials to review, which I did.  And I reviewed those

8  materials and put together a report of final opinions on

9  the 7th -- the night of the 7th, flew down here on the

10  8th, and gave a copy to Ms. Stevins, and here it is the

11  morning of the 9th.

12      Q.   Can you pull out your preliminary report?  And

13  we'll title that as Defense Number 2, Report Number 1.

14      A.   I have my copy of my report of preliminary

15  opinions dated July the 3rd, 2006, yes.

16          MS. STEVINS:  And I'm not going to allow Melvin

17      Tucker to turn in that copy for his deposition,

18      because it contains work product on it.

19          MR. ALLEY:  It's being marked as an exhibit.

20          MS. STEVINS:  I don't care.  It contains work

21      product, Mr. Alley.  First of all, the first page

22      has handwriting on it.  The last page has

23      handwriting on it.  Those are Mr. Tucker's notes.

24      Those are attorney/client privilege notes.  That's

25      his strategy.  There's also highlight in the

14

1    document.

2         If you would like to receive a clean copy of

3    that and have it marked, I have no problem with

4    that.  It will not be produced to you with his

5    handwritten notes on it.

6         MR. ALLEY:  What do you mean "that's his

7    strategy"?  What is "his strategy"?

8         MS. STEVINS:  It's none of your business what

9    strategy is or is not.  There's handwritten notes on

10   it.  It's contained in his personal file.  That's

11   his notes, his thoughts.  It is privileged materials

12   regarding our case.

13        MR. ALLEY:  His subpoena -- the subpoena

14   specifically requested his handwritten notes.  He

15   doesn't have work product privilege.

16        MS. STEVINS:  You've asked for a report of his

17   preliminary opinions.  He has made notes on his

18   report and I'm not allowing that to be included as

19   part of the exhibit.

20        MR. ALLEY:  Let's mark it, let's copy it, we'll

21   take it to the Judge.  Let's mark it and copy it and

22   take it to the Judge.  He's relying it for his depo.

23   He brought it in honor of the subpoena.  He put it

24   on the table for me.  When I asked him what

25   documents he brought, he put it on the table.  And

15

1    I'm marking them all in honor of the subpoena.  I

2    sent him a letter indicating I'm doing it.  And if

3    you're going to prevent it from being marked as an

4    exhibit, we're going to mark it and identify it,

5    copy it, and we'll take it to the Judge and argue

6    about it.

7         MS. STEVINS:  Does that contain any of your

8    thoughts or impressions?

9         THE WITNESS:  I have no concerns at all about

10   providing my report of preliminary opinions.

11        MS. STEVINS:  Including the handwritten notes

12   on it?

13        THE WITNESS:  It has handwritten notes on it,

14   my copy on the front, and some notes to add

15   something whenever I finalize my report.  That's it.

16        MS. STEVINS:  Okay.  Then you shall have it.

17        MR. ALLEY:  Can we mark that as Defense Number

18   2, Tucker's First Report or Tucker Report Number 1?

19        (Defendant's Exhibit No. 2 was marked for

20   identification.)

21   BY MR. ALLEY:

22        Q.  Mr. Tucker, this is your -- the reason I'm

23   having this marked is I want it to be -- this is your

24   first report, right?

25        A.  I don't know.  Yeah, that's my first report.

16

1  That's the report of preliminary opinions.

2       Q.   Now, Ms. Stevins said something about strategy.

3  Do you have any idea what she means by what your strategy

4  would be?

5       A.   I don't have any idea what she means by that.

6  You have to ask Ms. Stevins.

7       Q.   Now, what is your -- Appendix C we talked

8  about, that's what you relied on to render your first

9  report; is that correct?

10      A.   No, that's not correct.  Appendix C that was

11 submitted with the original report to you, I assume, had

12 the materials that were relied upon to develop my

13 preliminary opinions.  I have brought with me today

14 materials that I reviewed since then as an update to the

15 Appendix C.  In fact, I have brought updated Appendix A,

16 B, and C for you here today.

17      Q.   Thank you.  But my specific question is:  You

18 didn't go back and amend your first report, you issued a

19 second report when you reviewed the additional materials

20 that were not on the original Appendix C --

21      A.   Well, that question --

22      Q.   -- is that correct?

23      A.   I don't think that is correct.  If I'm making

24 sense out of what you're saying, I would say to you that

25 I amended my preliminary report, and those opinions that

17

1   I had in my preliminary report are now opinions 5, 6, and

2   7, I believe, but I added additional opinions since

3   filing the preliminary report, providing Ms. Stevins with

4   my report of preliminary opinions.

5       Q.    So your opinions 1, 2, and 3 were on -- based

6   on the -- pursuant to the rules based on the disclosures

7   you made in your Appendix C.  You outlined all the

8   materials that you reviewed and you relied upon in

9   issuing your report on your first report, what's been

10  marked as Defense Number 2, Tucker's First Report, your

11  report of preliminary opinions.  That was your -- what

12  you relied on there was Appendix C, is that correct?

13      MS. STEVINS:  Objection.  Compound.

14      A.    Yeah.  I frankly don't make any sense out of

15  that question at all except to say to you that the report

16  of preliminary opinions that I provided, and it was dated

17  July the 3rd, 2006, listed materials in Appendix C that I

18  used to develop these preliminary opinions of which there

19  were three opinions.  Those materials --

20  BY MR. ALLEY:

21      Q.    Thank you.

22      A.    The materials that I reviewed were the items 1

23  through 8 on Appendix C that was submitted with the

24  report of preliminary opinions.

25      Q.    Can you read on page 2 from your first report,

18

1   which is your report of preliminary opinions, I'm asking

2   you to read on page 2 "Materials Reviewed" and the

3   sentence below it?  Can you please read that out loud?

4       A.    "Materials Reviewed.  I reviewed the materials

5   listed in the attached Appendix C in developing my

6   preliminary opinions in this case."

7       Q.    Is that a true and accurate statement that you

8   wrote?

9       A.    Well, I believe it is.  I tried to be.

10      Q.    And is Appendix C what you relied on in issuing

11  your first report?

12      A.    I give the same answer I gave a little while

13  ago.

14      Q.    Okay.  There's no need to do that.  Thanks.

15  You read it for me.  That's what I wanted you to do.

16          You said that's accurate?

17      A.    To the bet of my knowledge it's accurate.

18      Q.    Now, you've issued a second report, is that

19  correct?

20      A.    I provided Ms. Stevins with a report of my

21  final opinions last night, that's correct.

22      Q.    Okay.  Can you hand that to me?

23      A.    It's my copy, unsigned, but it's only my copy.

24          MR. ALLEY:  I'd like to mark this as Defense 3,

25      Tucker Report Number 2.

19

1          MS. STEVINS:  Would you like the signed copy?

2          MR. ALLEY:  I fully --

3          (Defendant's Exhibit No. 3 was marked for

4    identification.)

5          MS. STEVINS:  I was just asking, would you like

6     the signed copy that I received last night to attach

7     to your deposition?

8          MR. ALLEY:  Yes, I fully expect that you comply

9     with the federal rules and provide us with the

10    report and the disclosures and I also expect to have

11    an opportunity to depose Mr. Tucker on that report.

12         MS. STEVINS:  Okay.  That's why he's here.

13         MR. ALLEY:  Thank you.

14   BY MR. ALLEY:

15     Q.   Mr. Tucker, this report that is marked as

16   Tucker's Report Number 2, Defense Number 3, Tucker's

17   Report Number 2, you have -- you gave to Samantha Stevins

18   last night?

19     A.   That's correct.

20     Q.   And you never gave a copy to us?

21     A.   That's correct.

22     Q.   Except until this morning?

23     A.   Until just now, that's correct.

24     Q.   Thank you.  Does Tucker's Report Number 1 and

25   Tucker's Report Number 2 contain all the opinions that

20

1  you intend to render to the jury in this case?

2      A.   I would say the answer to that is yes, unless

3  I'm asked anything else at trial, at which point I would

4  respond to either you or to plaintiff's counsel.

5      Q.   Thank you.  What documents did you rely on to

6  render Tucker's Report Number 2?

7      A.   Well, as I said, I brought an updated Appendix

8  C "Materials Reviewed."  And I have that with me, so I've

9  relied on that.

10     Q.   Can you stack them here so I can mark them?

11     A.   The materials?

12     Q.   Yes.

13     A.   Sure, if you'd like.  Thank you.

14          The first one is deposition transcript of David

15  Grossi.

16     Q.   Okay.  Keep going -- go through them all.

17  Let's go as quickly as you can.  Take your time, but go

18  as quickly as you can.  I just want to know what you

19  relied on, so I can mark it for your second opinion.

20          Was there anything else other than the

21  deposition of David Grossi -- the videotaped deposition

22  of David Grossi?

23     A.   I think now that you're asking the question

24  again, you're saying "relied upon".  I reviewed these

25  materials.  Whether I relied upon them in the development

21

1  of my opinion is the second question as I see it.  I

2  didn't rely upon Mr. Grossi's deposition testimony in

3  developing my opinions, but I did review his deposition

4  and his report.

5      Q.   So what information did you rely upon to

6  develop your reports?

7      A.   Well, I read the deposition transcript of David

8  Millhorn dated November 7th and 8th of 2006 in two

9  volumes.

10     Q.   Could you please -- please don't take things

11 off the table.

12     A.   Well, I have to figure out some way to shuffle

13 this around.  I'm not trying to hide anything.  I just

14 really would like to be able to put the materials out

15 there and try to find them in the order in which you're

16 asking for them.  Is that all right with you?

17     Q.   Whatever you relied on, if you'll put it in a

18 pile for me, we'll have it marked.  Whatever is

19 convenient for you.

20     A.   That's what I'm trying to do.  Now, I'm going

21 to put up here the deposition transcripts, Volumes 1 and

22 2 of David Millhorn.  Then the deposition transcript of

23 Christopher Reiman.  Then the deposition transcript of

24 Frederick Schaerf, M.D.  Then a CD containing a

25 videotaped deposition of Pedro Ochoa.

22

1          I don't know.  I don't know if that was on a

2    separate DVD or not, but I had a videotape and it was

3    dated, and the same thing for Mr. Santana.  See, it's

4    inside -- it's inside his written deposition, so maybe

5    that's the same for the other person.

6          That's Mr. Santana.  Mr. Dorsi.  There's

7    another one of Santana.  Mr. Dorsi or Dorsi.  Bonita Rosa

8    deposition.

9          I might not be able to find that one right now.

10   Q.    Which one?

11   A.    Ms. Rosa's deposition.

12   Q.    Ms. Rosa's deposition?

13   A.    I tried to keep all this stuff together, but in

14   coming down here, I put it in suitcases.  I hope I didn't

15   leave anything in the suitcase.

16   Q.    Okay.  If you can't place your hands on it,

17   let's keep moving on as to what other, if you don't mind.

18   A.    Deposition of K. Dorsi.

19         MS. STEVINS:  You already put that up.

20   A.    Here it is right here.

21         Ruthie Bass.  Leroy Bass, Sr.

22         This is a transcript of the video deposition I

23   already put up there of Mr. Perez.  So I have that

24   already up there as a video.

25         Leroy Bass.  And a group of documents from

23

1    request for production.

2         And these are other items that I received last

3    night from Ms. Stevins that's not listed there, because

4    that was not considered when I wrote my report.

5         Q.   Okay.  We'll talk about those in a minute.  But

6    the stack that I'm going to mark, this is backup to your

7    second report.  Is this all the backup or is Appendix C

8    and this all the backup for your second report?  Do you

9    know what I'm asking?

10        A.   No, I don't.  I have listed -- I have it here

11   for you.

12        Q.   Okay.

13        A.   The materials that I reviewed in preparation of

14   both preliminary report, what you're calling report

15   number 1, and my second report, which is my final

16   opinions.  I have a list of that for you.  I tried to

17   update Appendix A, B, and C for you here so that I would

18   be able to provide it to you.

19        Q.   I appreciate that, but I haven't had a chance

20   to read that.  While I'm here on the depo, just to save

21   judicial economy and to try to keep resources as --

22   without wasting resources, I'm asking you, when you

23   developed your second report, are you relying on the

24   stuff from your first report and the stuff you've stacked

25   here, or is it just the stuff you've stacked here?

24

1      A.    I'm relying on the materials that I reviewed in

2   the first report and the materials that I added to that,

3   which are 12 additional items in the second report.

4      Q.    Okay.  Thank you.

5      A.    And I believe, just for clarification purposes

6   the CDs containing information regarding 26A are also

7   these CDs on the police station video and 9-1-1

8   transcripts or whatever this one here, yeah, 9-1-1 tape.

9      Q.    Okay.  So what we've marked as Defense 1, which

10  are the two CDs, you're saying those are two more CDs

11  that would be on that?

12     A.    That I reviewed prior to rendering my first

13  report, that's correct.

14     Q.    And that's listed on Appendix C as the Rule 26

15  stuff?

16     A.    I think so.

17     Q.    Can we have those two marked as parts of

18  Exhibit 1, Defense 1?

19          Now, the stack you have right there, you were

20  provided additional materials by Samantha Stevins last

21  night?

22     A.    I was.

23     Q.    Can you go through each one of those and

24  identify what they are?

25     A.    Well, yes, sir, I will.  I have here also that

1  I brought along materials that I provided her regarding

2  the -- her preparation for a deposition of defense expert

3  David M Grossi.

4      Q.  Okay.  We'll get it that in a little bit.  I

5  appreciate that.

6      A.  Can I set it aside?  Do you mind if I set it

7  down here as I go through?

8      Q.  Sure.  We'll talk about it later.

9      A.  All right.  What I was provided last night --

10  this is what -- this is my fax transmittal that I

11  received from you regarding subpoena duces tecum.

12      Q.  Okay.

13      A.  I received deposition --

14      Q.  Did you rely on this in your forming your

15  opinion?

16      A.  No, I relied on that in terms of bringing the

17  materials that I brought here today.

18      Q.  Okay.  So I'll leave it where you put it.

19      A.  I received last night deposition transcript of

20  Michael Maurer, deposition transcript of Dion Freeman,

21  deposition transcript of Jeffrey Paul Bernice, deposition

22  transcript of Timothy Kurkimilis, deposition transcript

23  of David Sanchez, deposition transcript of Hilton

24  Daniels, and a document entitled Exhibits -- Plaintiff's

25  Exhibit 1 through 3, which I believe is the entire

1  General Order Manual, Fort Myers Police Department.

2      Q.   Okay.  What are those depositions?  Have you

3  had a chance to review those?

4      A.   I have.  Not as thoroughly as I'd like, but I

5  did review them last night.

6      Q.   Okay.  Can we have those marked?

7      A.   Certainly.

8          MS. STEVINS:  Give me one minute please because

9      I provided these to him.

10         THE WITNESS:  Do you have a problem of me

11     setting the General Order Manual down here?

12         MR. ALLEY:  I want it marked.  I'm going to

13     have it marked.  I'm going to have it marked.

14         MS. STEVINS:  I'm objecting to the turning over

15     of all of the depositions on the grounds that it

16     contains my work product.  That is privileged

17     information.  There is handwritten notes in these

18     depositions that were provided to Mr. Tucker from

19     me.  There is also highlit information contained

20     within every deposition I have.  That's work

21     product, Mr. Alley.

22         MR. ALLEY:  Let's mark them.

23         MS. STEVINS:  I'm not turning them over.

24         MR. ALLEY:  Let's mark them.  He brought them

25     and he read them and he's giving his expert opinion