152

1    continuums.

2        Q.    I'm not sure he has any OC.

3        A.    Well, go get some.

4        Q.    Just stop, run out to the cargo store, and get

5    some?

6        A.    Right.  Right.  Just stop.  This person isn't

7    trying to flee.

8        Q.    This person is acting in a seconds moment when

9    somebody throws their elbow into his gut.  You're saying

10   he's just supposed to stand there or he's supposed to run

11   out and get OC spray?  Is that your testimony?

12            MS. STEVINS:  Objection.  Assumes facts not in

13        evidence.

14   BY MR. BURANDT:

15       Q.    Is that your testimony, sir?

16       A.    My testimony is that he not only used force

17   that was not objectively reasonable under Graham v.

18   Connor.  He used force that violated his own departmental

19   policy.  And furthermore, when it was investigated and

20   signed off by his supervisor, as I read the report, he

21   just accepted the opinion of Mr. Millhorn and didn't even

22   bother to analyze the situation.

23       Q.    You keep referring to Graham v. Connor.  That

24   was a situation with an arrest out on the street?

25       A.    Yes, it was.

153

1     Q.   And you do agree that or do you agree --

2     A.   No, I'm sorry.  It was not.  It was a detention

3 out on the street.

4     Q.   A detention arrest?

5     A.   I don't know what a detention arrest is.  It

6 was either a detention or it's an arrest.

7     Q.   Right.

8     A.   This was a detention.

9     Q.   Detention out on the street?

10    A.   Out in the field, yes.

11    Q.   Would you agree or disagree that there's

12 different types of use of force, one when you're out on

13 the street or in a field, as you call it, and another one

14 when you're in a detention facility?

15    A.   You know that I've read Graham v. Connor 50, 60

16 times.  I've never seen a distinguish between force in a

17 jail setting or in a field setting.

18    Q.   I'm just asking you if you would agree or

19 disagree to the statement, there are two different uses

20 of forces, one is when you're out on the street and

21 detaining somebody or arresting somebody and another when

22 you're in a detention facility?

23    A.   I will not agree to that and Graham v. Connor

24 doesn't distinguish as to whether or not a person is

25 standing in a booking room or they're out in the field in

154

1    the objective reasonableness test.

2        Q.    And you've never been a warden or in charge of

3    a detention facility?

4        A.    Yes, I have, sir.

5        Q.    Where was that?

6        A.    In Hickory, North Carolina I was jail

7    certified.   If you look at my C.V., it's on there.   It

8    shows I operated a jail for three and a half years, a 92

9    bed jail.   I was certified by the federal government and

10   the state of North Carolina.

11       Q.    And that was in relationship to being chief of

12   police?

13       A.    We operated a municipal jail.

14       Q.    And how many people were in that municipal

15   jail?

16       A.    It was a 92 bed facility in 1974.

17       MR. BURANDT:   Do you want to take a two minute

18       break?

19       (Recess taken from 12:33 to 12:34 p.m.)

20       THE WITNESS:   I'm making inquiry about whether

21       or not I am going to be paid for my travel down here

22       today, my expenses for staying at a motel last night

23       that cost me $240, my flight down here, my rental

24       car, and my fee for deposition here today.   And I

25       provided an invoice a week or two in advance, and

155

1   now I'm being told I'm not going to be paid.  And I

2   would like the Court to make a determination as to

3   why I should have to be here to be deposed, assuming

4   that I was going to be paid and fronting the cost

5   for the City of Fort Myers and the other attorneys

6   here, and not being paid for my time and expenses to

7   be here for deposition.

8        MS. STEVINS:  And I'm sure you know I will be

9   motioning the Court.

10       Mr. Burandt, I know you weren't here last time,

11  but I'm wondering.  I talked with Mr. Alley about

12  this.  Last time he brought a check, but he brought

13  a check in full.  And I had asked him if the City

14  was going to be solely responsible for paying

15  Mr. Tucker's costs and expenses as the plaintiff's

16  expert witness, and am I correct, your response was

17  no?

18       MR. ALLEY:  Mr. Tucker, my understanding, has

19  been paid $2,000 check for the last time he was

20  here.

21       MS. STEVINS:  That was from the City.

22       MR. ALLEY:  Please let me state without

23  interruption.

24       MS. STEVINS:  Okay.  I'm sorry.

25       MR. ALLEY:  Mr. Tucker was paid a couple

156

1 hundred dollar flight ticket the last time for a

2 cancellation that the City paid, that Mr. Tucker was

3 paid $2,000 check the last time he was here and he

4 his deposition didn't go forward, and Mr. Tucker was

5 paid another check for, I don't know, various

6 expenses.  At the time I asked him not to cash the

7 $2,000 check, because there was a dispute at that

8 time on what his fee will be for the next one.  And

9 I explained he is going to get paid a reasonable fee

10 for his testimony, that the time he was here, and he

11 is going to get paid a reasonable fee.

12   Then I got a call from Vicki in Samantha

13 Stevins' office recently.  By the way I asked him

14 not to cash that $2,000 check.

15   THE WITNESS:  As far as I'm concerned, this

16 deposition is over with and I'm taking the materials

17 and leaving, because I don't think it's a valid

18 subpoena if I'm here and not being paid.  So you can

19 do what you want.

20   MR. ALLEY:  I'm finish creating a record.

21   THE WITNESS:  Go ahead.  Create the record.  As

22 far as I'm concerned, the deposition is over with.

23 I flew down here.  I bought a ticket, an airline

24 ticket.  I flew down yesterday.  I got here.  I paid

25 for a room last night.  I rented a car.

157

1      MR. ALLEY:  And you're going to get paid,

2  Mr. Tucker.

3      THE WITNESS:  In accordance with the subpoena.

4      MR. ALLEY:  Your lawyer -- your lawyer -- I

5  called your lawyer.

6      THE WITNESS:  I'm not under a subpoena that's

7  valid if I'm not paid for being here.  As far as I'm

8  concerned, it's over with and I'm out of here.  You

9  do what you want.

10      MR. ALLEY:  Mr. Tucker, what documents are you

11  taking?

12      THE WITNESS:  I'm taking them all.  I don't

13  have any obligation to you.

14      MR. ALLEY:  You're not taking what's been

15  marked --

16      THE WITNESS:  I'm taking everything that's

17  here.  As far as I'm concerned, this is not a

18  deposition.  I'm not under a subpoena.  That's not a

19  valid subpoena if I'm not paid for my time to be

20  here and my efforts of being here.

21      MR. ALLEY:  Mr. Tucker, you are being paid for

22  your time to be here.

23      THE WITNESS:  No, I'm not.  Where is the check?

24      MS. STEVINS:  It's not here.

25      THE WITNESS:  It's not here, I'm out of here.

158

1    You do what you want. I'll see you in court. I

2    can't work for nothing. That's not my job.

3        MR. BURANDT: Can I ask how much money we're

4    talking about?

5        MS. STEVINS: I think your invoice was $3,000

6    and change.

7        THE WITNESS: My expenses for being down here

8    is my flight coach class, my motel room --

9        MR. BURANDT: Sir, I don't -- just give me a

10    number. I ask you what time it is. You keep

11    telling me how to build a watch.

12        THE WITNESS: I don't have it here.

13        MR. BURANDT: I just want to know how much

14    you're talking about and how much you've been paid.

15    Grant says you've been paid $2,000.

16        MR. ALLEY: He's been paid more than $2,000.

17        THE WITNESS: When I showed up at a prior

18    deposition --

19        MR. ALLEY: Please sit down and finish your

20    depo. You're going to get paid.

21        THE WITNESS: -- down here and was here to give

22    testimony and you-all were not able to proceed. I

23    don't then have to therefore don't get paid for my

24    time and expenses to come down here.

25        MR. ALLEY: You did get paid for that, didn't

159

1    you?

2         THE WITNESS:   I did get paid for my time and

3    expenses.  Now, I'm down here again.  I have flight,

4    motel, car rental, food.

5         MR. ALLEY:  Where your invoice, Mr. Tucker?

6         THE WITNESS:  I gave it to you.

7         MR. ALLEY:  To who?

8         THE WITNESS:  I gave it to Ms. Stevins.

9         MR. ALLEY:  Where is your invoice, Mr. Tucker?

10   While you're grabbing the documents that have been

11   marked as exhibits and putting them in your

12   briefcase, where is your invoice?  Did you give me

13   your invoice?

14        THE WITNESS:  I'll give it to you right now.

15        MR. ALLEY:  Do you think you should give me

16   your invoice before you --

17        THE WITNESS:  Are you going to pay it?

18        MR. ALLEY:  I would like to see your invoice

19   before you walk away.

20        MR. BURANDT:  It's not in the report.  If it's

21   not in the report --

22        MR. ALLEY:  Why are you taking the documents

23   that are marked on the exhibit and taking --

24        THE WITNESS:  Because I'm not considering

25   myself to be under a valid subpoena since you

160

1    haven't paid me.

2        MR. ALLEY:  Do you need to submit an invoice,

3    Mr. Tucker?

4        THE WITNESS:  Yes.

5        MR. ALLEY:  Will you submit an invoice?

6        THE WITNESS:  I did.

7        MR. ALLEY:  You did not submit an invoice.

8        THE WITNESS:  Did I give you and invoice?  Did

9    you give it to them?

10       MR. ALLEY:  You did not give us an invoice.

11       MS. STEVINS:  I believe I did.  I think we did

12   fax it up.

13       MR. ALLEY:  You did not give us an invoice.

14       MS. STEVINS:  I believe I did.  I will have to

15   look at the fax.

16       MR. ALLEY:  What's the amount for?

17       MS. STEVINS:  I believe that was faxed to your

18   office.

19       MR. ALLEY:  I do not have an invoice for

20   $3,238.

21       THE WITNESS:  All I know is that I've been

22   doing this for 13 years and you folks right here

23   today have been more disrespectful of me since I've

24   been doing this and I've not had this kind of stuff

25   happen where I go to -- I'm out money for being down

161

1    here, and I don't think the Court is going to hold

2    me in contempt for leaving.  I think they're going

3    to deal with you folks for being the way you are.

4         MR. ALLEY:  Mr. Tucker, I've got your invoice.

5    You're going to get paid.  Sit down and finish your

6    deposition.

7         MS. STEVINS:  Will he be paid in full?  Will a

8    check for the full amount of his invoice be paid to

9    him?  Or is it going to be your representation that

10   that's not a reasonable thing and we will have to

11   fight it out in court?

12        MR. BURANDT:  So as I understand it, he's

13   asking for over $5,000 in fees for two depositions?

14        MR. ALLEY:  $5,328.

15        MR. BURANDT:  And your whole fee to review this

16   case is $5,000?

17        MR. ALLEY:  You've been given more than --

18   you've been paid more than $2,000, Mr. Tucker.

19        MS. STEVINS:  Right.

20        MR. ALLEY:  Already.

21        THE WITNESS:  My expenses for flying down here,

22   my lodging.

23        MR. ALLEY:  Isn't it unreasonable you taking

24   the documents from the court reporter, standing up

25   and filling the briefcase when you don't even know

162

1    if this invoice has been given to the City yet?

2         THE WITNESS: I'm sorry. That's too bad. I

3    gave the invoice to Ms. Stevins and asked her to

4    forward it to you. If you-all are not going to pay

5    it, then I'm leaving.

6         MR. ALLEY: I'm not saying we're not going to

7    pay it, Mr. Tucker.

8         THE WITNESS: Settle the issue right now. Are

9    you going to pay my invoice or we going to have to

10   just leave and let the Court decide on what we're

11   doing or not doing? I have no problem at all with

12   that. I don't believe the Court is going to find me

13   at fault when I have flown down here, I prepared for

14   this deposition.

15        MR. ALLEY: You don't need to stand up and

16   shout at me.

17        THE WITNESS: I prepared a report.

18        MR. ALLEY: Sit down. Relax.

19        THE WITNESS: I don't need to sit down.

20        MR. ALLEY: You don't need to shout and point

21   your finger at me. You don't need to do that.

22        MS. STEVINS: Is it going to be paid in full or

23   isn't it? That's the only question we have.

24        MR. BURANDT: One question I have is one day of

25   deposition testimony. We're at a half a day. That

163

1   should probably be a half a day deposition.

2        THE WITNESS:  Yes, I scheduled the entire day.

3   I was ready to sit here until 5:30 or 6:00 o'clock

4   if necessary.

5        MR. BURANDT:  I can't charge for my time unless

6   I utilize the time.  To say I scheduled the whole

7   day --

8        THE WITNESS:  Right.  That's the same thing we

9   talked about the last time I was down here, because

10  I was here sitting at 11:00 o'clock and you had to

11  cancel.

12       MR. BURANDT:  And I didn't set you for

13  deposition.

14       THE WITNESS:  The deposition was cancelled the

15  last time and you're saying, well, okay, go back

16  home.  I had a flight the next day.  I had to stay

17  over or pay an extra fee and I'm not doing that.

18  Let the Judge decide.

19       MR. BURANDT:  Well, let's move to strike.  I

20  mean you said you were going to --

21       MR. ALLEY:  Yeah, I don't like the idea of him

22  taking documents, you know, on his depo.

23       MR. BURANDT:  He's leaving.  That's all you can

24  do.

25       THE WITNESS:  Then you've got to try and decide

164

1    what you're doing ahead of time.  I asked you the

2    question before we got started and you wouldn't

3    answer me.

4        MR. ALLEY:  I said, let's go on record.  I wish

5    we had a video, because I'd like the Court to see

6    what you're doing.  I wish we had a video.

7        THE WITNESS:  I wish we had a video too,

8    because I wish the Judge could see you sitting there

9    and him walking out here telling me my opinions are

10   absurd and I have never had that happen in 13 years

11   of providing litigation.

12       MR. ALLEY:  I didn't say that.

13       THE WITNESS:  That's the kind of treatment I've

14   had.  I want the Court -- I'll be happy to appear

15   before the Judge and talk about the way you folks

16   have been with me.  Happy to.

17       MR. BURANDT:  Mr. Tucker, for the record I

18   apologize for referring to your opinions as absurd.

19   That was wrong and I apologize for it.

20       MR. ALLEY:  Hold on.  Let's everybody just cool

21   down a second.  Let's wait a second.

22       (Brief pause.)

23       MR. ALLEY:  Let's go back on record.  I

24   received Mr. Tucker's -- I received Mr. Tucker's

25   invoice for $3,238.60 and we will pay him.  We'll

165

1    pay him.

2          Now, will you please sit down and give the

3    documents back to the court reporter, what's been

4    marked and all the documents you brought back, and

5    please so they can be marked and left with the court

6    reporter?

7          Ms. Stevins will you please -- the exhibit

8    lists for the -- that you took, will you please sit

9    down so we can continue?

10         MS. STEVINS:  When will he be paid?

11         MR. BURANDT:  I'm leaving.  I have to go to

12   Miami.

13         MR. ALLEY:  As soon as we can, we'll run a

14   check.  We'll get a check.  It takes like two weeks

15   to run a check.

16         MS. STEVINS:  That's fine.  That's what I

17   wanted to know.

18         (Mr. Burandt and Ms. Darley left the

19   deposition.)

20         THE WITNESS:  Do you want me to stay?

21         MS. STEVINS:  Yeah.  I mean they're

22   representing they're going to pay you in full, so

23   yes.

24         THE WITNESS:  At this point it doesn't happen

25   to be over money.

166

1     MS. STEVINS:  Did Mr. Burandt have further

2  questions?

3     MR. ALLEY:  You'll have to ask him.  I don't

4  know.

5     MS. STEVINS:  Well, I'd like it noted.  Is he

6  returning?

7     MR. ALLEY:  You'll have to ask him.  I don't

8  know.

9     MS. STEVINS:  Well, you just had a conversation

10  with him a moment ago.

11     MR. ALLEY:  It wasn't about that.

12     MS. STEVINS:  Okay.  Is this Mr. Burandt's

13  stuff or yours?

14     MR. ALLEY:  That's mine.

15     MS. STEVINS:  Okay.  Do you have further

16  questions for Mr. Tucker?

17     MR. ALLEY:  Let me see.  Can we get all that

18  stuff out and give it to the court reporter?

19     THE WITNESS:  Yeah.

20     MR. ALLEY:  Thank you.  Can you do that now?

21     MS. STEVINS:  You already looked through these,

22  right?

23     MR. ALLEY:  Yeah, I'd like those marked.  We

24  are going to need a copy of everything, everything

25  you brought.

167

1        There was another -- a witness list or an

2    exhibit list.

3        THE WITNESS:  Everything is right there in

4    front of you.

5        MR. ALLEY:  I guess Ms. Stevins took it.

6    Hilton Daniels depo?

7        MS. STEVINS:  Oh.  Just so that you know, just

8    so I can note what this is, it is the documents that

9    were provided by the chief of police during his

10   deposition.

11       Do you want to take a few minute break?

12       THE WITNESS:  That's fine.

13       (Recess taken from 12:48 to 12:57 p.m.)

14       MS. STEVINS:  You're saying that because

15   Mr. Tucker has provided his finalized report based

16   upon the information that he's received today, that

17   somehow you cannot be adequately prepared, if I'm

18   understanding you correctly, to ask him deposition

19   questions based upon his opinions, and that's what

20   he's here to testify to today.  That's why he was

21   brought down, so you can ask him any questions you'd

22   like.  The fact he's created a final preliminary --

23   from a preliminary to a final report doesn't change

24   anything other than the fact that he's expanding his

25   opinions based upon new information and all that new

168

1   information that was given to him.

2       We had the same thing happen to us when your

3   expert came.  We didn't object and say we couldn't

4   take his deposition right then and there.  Hell,

5   your expert told us when we could depose him and

6   only gave us a single day in a single month and an

7   appointed hour and an appointed time and even wanted

8   to be deposed in Naples to the inconvenience of

9   everybody else, which luckily for us we were able to

10  move last minute to Fort Myers.  But he didn't

11  come -- you know, he came with new information too,

12  but we proceeded with his deposition, so I don't

13  understand what the issue is.

14      Mr. Tucker has brought everything, responded to

15  your last minute subpoena duces tecum that was faxed

16  to his office just before -- literally just before

17  he got on the plane.  In response to that he packed

18  an entire suitcase plus of documents responsive to

19  that subpoena.  I don't know what more you could ask

20  for him to do.  And I don't see how or why you would

21  need to redepose him when all you have in front of

22  you is a final opinion from preliminary to final.

23  And what's changed is, he gave you an amended list

24  of those items that he reviewed in formulating his

25  final opinion.  So I don't see what the big deal is

169

1    here.  I just don't see it.  I don't understand.

2        MR. ALLEY:  I'm reading from David Grossi's

3    deposition.

4        MS. STEVINS:  Yeah.

5        MR. ALLEY:  And may I now?

6        MS. STEVINS:  Please.

7        MR. ALLEY:  Without interruption please?  If

8    you're finished, may I respond without interruption?

9        MS. STEVINS:  Absolutely.  The only other thing

10    I want tell you is we did provide you a copy of the

11    invoice, but my office is looking for the fax to

12    find out when it was faxed to you.

13        MR. ALLEY:  And I just checked with my office

14    and we don't have a copy of the invoice.  But

15    Mr. Tucker is getting paid.  We have agreed to pay.

16    Is that an issue?

17        MS. STEVINS:  Not anymore.  State what you need

18    to.

19        MR. ALLEY:  I'm reading from David Grossi's

20    opinion -- or deposition and Mr. Grossi -- you just

21    said that Mr. Grossi argued about his depo when he

22    brought new reports and new analysis.

23        MS. STEVINS:  No, that's not what I said.

24        MR. ALLEY:  Okay.  What did you say?

25        MS. STEVINS:  What I said was, when he arrived

170

1    at his deposition, he brought documents responsive

2    that we were looking for.  There was a packet of

3    information that he brought responsive.

4        MR. ALLEY:  Yes.

5        MS. STEVINS:  We did not receive that packet in

6    advance of his deposition.  We only got it that day.

7        MR. ALLEY:  And I'm not objecting.  All I'm

8    asking, and Mr. Tucker graciously answered the

9    question, that of course I could question him about

10   his new report.  He issued a new report and the new

11   report doesn't have three opinions now, it has six

12   opinions.  After reading -- while he was talking to

13   Burandt, I was reading his -- it's a different

14   report.

15       MS. STEVINS:  No, it's not.  No, it's not.

16   That's what your mistake is.

17       MR. ALLEY:  It's got six opinions as opposed to

18   three.

19       MS. STEVINS:  It's not a different report.  He

20   had a preliminary report.  He has made that report

21   final, okay?

22       MR. ALLEY:  The documents are not identical.

23   He has added three opinions that weren't in the

24   report and I want to ask him questions about it.

25       MS. STEVINS:  And you're entitled to.

171

1        MR. ALLEY:  I understand that.  And he's also

2    provided -- there is a -- you handed me a copy of an

3    updated Appendix C on the documents and materials

4    you reviewed, and he brought those and that's not

5    the same as his original Appendix C and I would like

6    to ask him questions about it.

7        MS. STEVINS:  You're entitled to.

8        MR. ALLEY:  And I'm not prepared to ask him

9    questions about his report, the new report that he

10   filed that you handed to me today and that's marked

11   as an exhibit.  And he even said he wouldn't object

12   to -- during the deposition of him, he wouldn't

13   object -- and I ask him again, would you object to

14   being deposed about -- on the report, on the new

15   report?  If you're going to testify about it to a

16   jury, do you object to that being done?  And he said

17   he wouldn't -- he wouldn't object, and so that's my

18   position.  I'm not going to -- I'm not going to --

19   I'm not prepared to ask him questions about that

20   report today.

21       MS. STEVINS:  So let me ask you this as a

22   solution.  Let me ask you this on the record.  Is it

23   possible now that Mr. Tucker has flown down here

24   twice for him to appear at a court reporter -- since

25   you want to continue the deposition is what it

172

1   sounds like to me and you're going to pay him his

2   fee so that you can finish your questioning, can we

3   agree that Mr. Tucker can go to a court reporter's

4   office in Tennessee and that you will telephonically

5   finish taking his deposition?

6        In other words, you, myself, Mr. Burandt will

7   all appear at a court reporter's office or your

8   office.  Mr. Tucker will have to go to a court

9   reporter in Tennessee and that you can continue

10  asking him any questions you want telephonically at

11  this point so that you have a full and complete

12  deposition?

13       MR. ALLEY:  I'm not going to speak for the

14  other parties.

15       MS. STEVINS:  But do you have any objection?

16       MR. ALLEY:  But I wouldn't object to going to

17  Tennessee and being present with him at a

18  deposition.

19       MS. STEVINS:  Okay.

20       MR. ALLEY:  Or I won't object to him going to

21  Tennessee, and we talked about this issue already,

22  to finish his deposition; nor would I object to him

23  coming down and being paid a reasonable fee for --

24  if the deposition is here.  But if you don't agree

25  to it, we can argue about it in front of a judge,

173

1    but I think it's -- hopefully it's something that we

2    don't have to argue about in front of a judge.  He's

3    filed a new report today.

4         MS. STEVINS:  I understand.

5         MR. ALLEY:  There's three new opinions.

6         Sir, I'm going to want to ask you questions

7    about it.  I hope I don't after I read it and go

8    through it, after I go through the documents you

9    brought today, but if I do, I'm going to want to ask

10   you questions about it.  I can't speak on behalf of

11   Mr. Burandt.  And if we don't, I won't -- I won't.

12   We won't ask you questions about it.  And that's the

13   best I can give right now.

14        MS. STEVINS:  But do you understand --

15        THE WITNESS:  I can tell you that -- this is

16   the deponent speaking, Mel Tucker.  I was asked

17   questions from that report by Mr. Burandt.  That's

18   the primary focus of his questions before he left

19   was on the basis -- questioned me about my

20   opinions -- final opinions as put in the report that

21   I provided you folks today.  This is not new ground.

22        I have done several depositions where I have

23   appeared with an updated report, updated C.V.,

24   updated appendix, updated materials list, provided

25   that to the attorneys.  They took a few minute

174

1    break, read over the report, came in and asked me

2    questions.

3         It's 1:00 o'clock.  You could have me here

4    until 5:00 o'clock this afternoon.  That's four more

5    hours.  It's seven opinions.  It would seem to me

6    that you would be able to look at that and ask me

7    questions about my opinions and I will be here for

8    four more hours and you'd have the matter resolved

9    and it's that simple.

10        MR. ALLEY:  So are you saying there's nothing

11   different between your first report and your second

12   report?  When I say "nothing different," I mean

13   substantively.  In other words, there's three

14   opinions in the first report.  In the second report

15   there's seven.  I thought there were six.  There's

16   seven.  There's four new opinions.  They are

17   substantive opinions, aren't they?

18        THE WITNESS:  Well, I think they're substantive

19   opinions.

20        MR. ALLEY:  Okay.

21        THE WITNESS:  And I was questioned on them by

22   you and Mr. Burandt already.

23        MR. ALLEY:  Well, I don't know how I questioned

24   you on them.  If I did, it was inadvertent, because

25   I didn't read your report until he was asking you

175

1    questions, because I was asking you questions.  I

2    didn't read the report while I was asking you

3    questions.

4        So I'm not trying to -- I'm not trying to be

5    inconvenient here, but I got a new report today and

6    I would like to reserve.  I'm not saying that I'm

7    going to ask you questions on them, but I'd like to

8    read the report and analyze it, and then if I need

9    to ask you questions on it, I'm going to try.

10       If you won't -- if for some legal reason you

11   don't want to allow it, we can argue about it in

12   front of a judge.  If you will allow it, then we

13   don't need to waste the court's time.  So we don't

14   need to talk about this anymore.

15       MS. STEVINS:  No.  I guess what I'm asking you

16   for is a happy medium though, Grant.  What I'm

17   asking you for is if you have any objection to a

18   telephonic deposition.  Instead of having

19   everybody --

20       MR. ALLEY:  No, I may want to go up -- I

21   probably will want to go up and be with him or have

22   him come down here.

23       MS. STEVINS:  Okay.

24       MR. ALLEY:  You know, I probably will want to.

25   I'm not saying I don't object, but I don't want to

176

1    say right now, well, no, I'm not going to depose him

2    on his new report, only do it by phone.

3         MS. STEVINS:  No, no, no, no.  I'm not saying

4    that.  I'm saying please consider it as an option.

5         MR. ALLEY:  Of course.  Of course.  I was

6    willing to go to Tennessee.

7         THE WITNESS:  Let me also say, first of all, I

8    was subpoenaed to appear down here for a deposition

9    and I made travel arrangements to come down, non

10   refundable airline tickets, and you folks canceled

11   the deposition.

12        MS. STEVINS:  The first time.

13        THE WITNESS:  You folks canceled the

14   deposition.  And I was sitting there with non

15   refundable airline tickets and I then had to submit

16   a bill to you folks to get reimbursed for that,

17   which I carried on my credit card and paid interest

18   on it until I got reimbursed.

19        MR. ALLEY:  No, sir.  We paid you.  We gave you

20   a check that day.  We gave you two checks that day,

21   didn't we?

22        MS. STEVINS:  He's talking about the first time

23   it was taken.

24        THE WITNESS:  I'm talking about the first

25   deposition which was canceled.