UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

BONITA ROSA,

               Plaintiff,

vs.                                    Case No.  2:05-cv-481-FtM-29SPC

CITY  OF  FORT  MYERS;  FORT  MYERS
POLICE DEPARTMENT; DAVID MILLHORN;
CHRISTOPHER REIMAN,

               Defendants.
_____

## OPINION AND ORDER

_____This matter comes before the Court on Plaintiff's Renewed Motion for Judgment as a Matter of Law Pursuant to Rule 50(b) and/or Motion for New Trial Pursuant to Rule 59 (Doc. #223), filed on November 5, 2007, and Bonita Rosa's Supplement (Doc. #226), filed on November 16, 2007.  Defendant Millhorn filed a Memorandum of Law in Opposition (Doc. #227) and a Motion to Strike Plaintiff's Supplement (Doc. #228).

    Plaintiff asserted that she was subjected to excessive force in violation of several constitutional rights while she was being processed in the booking room of the Fort Myers Police Department after her arrest, and filed a complaint under 42 U.S.C. § 1983. The events in the booking room were captured on a series of still surveillance photographs that resembled a video without sound when played.  These surveillance photographs did not conclusively establish plaintiff's claim, and testimony from both sides disputed

exactly what was done and being said during the events.  The jury found that there was no excessive force by defendant Officer David Millhorn.

## I.

While plaintiff has filed a Notice of Appeal (Doc. #229) from the judgment and other orders, a district court has jurisdiction to rule on the pending motions because the premature notice of appeal does not become effective until the order disposing of the motions is entered.  FED. R. APP. P. 4(a)(4)(B); <u>Williams v. Pettiford</u>, 238 Fed. Appx. 459, 461 (11th Cir. 2007).

## II.

Initially, defendant suggests that plaintiff's motion under Rule 50(b) is inappropriate because she did not make a motion for judgment as a matter of law at the conclusion of defendant's case. Plaintiff claims she made such a motion (Doc. #223, p. 2, ¶4). Neither party submitted a transcript of the pertinent portions of the trial, and the Court does not have a distinct memory supporting one side or the other.  Therefore defendant's argument will be rejected.

Plaintiff asserts that the Court should grant judgment as a matter of law because the evidence was legally insufficient to support the verdict of the jury.  (Doc. #223, pp. 2-5.)  A Rule 50 judgment as a matter of law is appropriate when there is no legally sufficient evidentiary basis for a reasonable jury to find for the

non-moving party.   Optimum Techs., Inc. v. Henkel Consumer Adhesives, Inc., 496 F.3d 1231, 1251 (11th Cir. 2007).   "[I]n deciding on a Rule 50 motion a district court's proper analysis is squarely and narrowly focused on the sufficiency of evidence." Chaney v. City of Orlando, 483 F.3d 1221, 1227 (11th Cir. 2007). As such, "[t]he jury's findings should be excluded from the decision-making calculus on a Rule 50(b) motion, other than to ask whether there was sufficient evidence, as a legal matter, from which a reasonable jury could find for the party who prevailed at trial."   Id. at 1228.   The Court looks at the record evidence drawing all inferences in favor of the nonmoving party.   Nurse "Be" v. Columbia Palms W. Hosp. L.P., 490 F.3d 1302, 1308 (11th Cir. 2007).   A jury verdict "must be left intact if there is evidence from which the decision maker . . . reasonably could have resolved the matter the way it did."   Rodriguez v. Farm Stores Grocery, Inc., ___ F.3d ___, 2008 WL 215817 (11th Cir. Jan. 28, 2008).   Even if the evidence would have supported a verdict for the losing party, "[t]he issue is not whether the evidence was sufficient for [the losing party] to have won, but whether the evidence was sufficient for it to have lost."   Id.

Plaintiff had the burden of establishing her excessive force claims.   The jury found plaintiff did not prove that Officer Millhorn used excessive or unreasonable force in violation of the Fourth Amendment, the Fourteenth Amendment, or the First Amendment. (Doc. #215.)   The evidence is sufficient to support the jury's

findings of no excessive or unreasonable force.   Contrary to plaintiff's suggestion, this is not a case in which the jury was compelled to believe Bonita Rosa or the evidence she presented. Both the evidence and the proper inferences to be drawn from the evidence were contested, and a reasonable jury could have resolved credibility disputes in favor of the defendant and found that the force used under the circumstances was not excessive, despite the injury to plaintiff.   The "video" of the incident did not resolve the issue conclusively, and the entirety of the evidence is fully sufficient to support the jury's finding of no excessive force. Accordingly, plaintiff's motion for judgment as a matter of law under Rule 50(b) is denied.

### III.

A Rule 59 motion for a new trial may be granted "for any reason for which a new trial has heretofore been granted in an action at law in federal court; . . ."   FED. R. CIV. P. 59(a)(1)(A). Such reasons include a verdict which is against the weight of the evidence, substantial errors in the admission or rejection of evidence, Montgomery Ward & Co. v. Duncan, 311 U.S. 243, 251 (1940), and improper opening statements or closing arguments, Christopher v. Florida, 449 F.3d 1360, 1365-66 (11th Cir. 2006). Resolution of a motion for a new trial is committed to the discretion of the trial court.   Montgomery v. Noga, 168 F.3d 1282, 1295 (11th Cir. 1999).

**A.  Sufficiency, Weight of the Evidence:**

Plaintiff argues she is entitled to a new trial because the evidence is insufficient to support the verdict, or the verdict is against the great weight of the evidence, because she proved excessive force by a preponderance of the evidence.  (Doc. #223, pp. 6-7.)  A district court should grant a motion for new trial when "the verdict is against the clear weight of the evidence or will result in a miscarriage of justice, even though there may be substantial evidence which would prevent the direction of a verdict. . . . Because it is critical that a judge does not merely substitute his judgment for that of the jury, new trials should not be granted on evidentiary grounds unless, at a minimum, the verdict is against the great - not merely the greater - weight of the evidence."  Lipphardt v. Durango Steakhouse of Brandon, Inc., 267 F.3d 1183, 1186 (11th Cir. 2001)(internal quotations and citation omitted).

Plaintiff was required to prove excessive force by Officer Millhorn.  As discussed above, the video did not conclusively establish excessive force, and the testimony was disputed as to who said and did what during the event.  Even if the Court weighs the evidence, Watts v. Great Atlantic & Pacific Tea Co., 842 F.2d 307, 310 (11th Cir. 1988), the Court concludes that the evidence is sufficient to support the verdicts and the verdicts are not against the great weight of the evidence.

**B.   Defendant's Opening Statement and Closing Argument:**

Plaintiff argues she is entitled to a new trial because defense counsel made improper statements in opening statement and improper arguments in closing argument.  Plaintiff concedes that she failed to object to many of the statements she now asserts were error, but argues that a curative instruction would have been useless because of the prejudice caused by the improper statements and arguments.  (Doc. #223, pp. 7-14.)

"A district court has wide discretion to regulate the scope of argument.  For reversible error to be found in closing argument, the challenged argument must be plainly unwarranted and clearly injurious."  Goldsmith v. Bagby Elevator Co., Inc., ___ F.3d ___, 2008 WL 150585 (11th Cir. Jan. 17, 2008)(citations omitted).  The failure to make a contemporaneous objection to argument claimed to be improper is "troublesome," but does not forfeit the ability to seek a new trial on the basis of improper closing argument where the interest of substantial justice is at stake.  McWhorter v. Birmingham, 906 F.2d 674, 677 (11th Cir. 1990); Christopher, 449 F.3d at 1366.  "The standard for determining whether a jury verdict should be set aside as a result of misconduct of counsel is whether the conduct was 'such as to impair gravely the calm and dispassionate consideration of the case by the jury.'" BankAtlantic v. Blythe Eastman Paine Webber, Inc., 955 F.2d 1467, 1474 (11th Cir. 1992)(citations omitted).

**(1) Defendant's Opening Statement:**

Prior to opening statements, the Court gave the Eleventh Circuit Pattern Instruction telling the jury that the statements of counsel were not to be considered as evidence or instructions on the law.  During defendant's opening statement, plaintiff objected once, and that concerned a matter which she does not now urge as supporting a new trial.  (Doc. #218, p. 11.)

Plaintiff argues that defendant's opening statement was improper because he stated plaintiff was not an ordinary grandmother (Doc. #218, p. 3); referred to matters which had been excluded by pretrial orders, such as what prompted the police to go to plaintiff's residence, the events at the arrest, and reference to the screwdriver; and continued to "trash" plaintiff by reference to her living arrangements with a live-in boyfriend and the long absence of her husband.  No objection was made to any of these statements, but plaintiff now argues these matters were irrelevant and had been excluded by pretrial orders.  (Doc. #223, p. 10.)

Nothing in the Court's Order (Doc. #194) ruling on various motions *in limine* precluded such matters.  This is fortunate for plaintiff, since her counsel began her opening statement with the following:

> This case takes place here, in Lee County, Florida, on April 30th of 2004; and it begins with a 911 phone call that's made regarding a minor domestic disturbance, the Fort Myers Police Department sending two officers out; . . . They arrive to Miss Rosa's residence, and you'll hear that, when they get there, they do not see any crimes

being committed.  But law enforcement presence is brought
out to the home, and what they discover is that Miss Rosa
has had an argument with her boyfriend because he brought
home another woman.  They had a relationship for 12
years, and he brought another woman to their home.  So
she took her screwdriver and she attacked their car.  And
it's her car, and her boyfriend's car.  And she was
arrested that night.

(Doc. #217, pp. 2-3.)   Plaintiff also stated in her opening

statement "So the testimony of Miss Rosa, and the testimony of

other officers, and the weight and credibility that you give to

those things, is crucial in this case."   (Id. at p. 5.)

Defendant's statement in his subsequent opening was that while

plaintiff "may appear, today, like somebody's mother or

grandmother, . . . what's important for you to remember and

understand is that the events that led up to her arrest and

subsequent incarceration were not the acts of a normal mother or

grandmother."  (Doc. #218, pp. 2-3.)   The other aspects of his

opening statement do no more than mirror what plaintiff's counsel

told the jury about the case and was supported by the evidence

eventually presented at trial.   The Court finds nothing improper

about the challenged aspects of defendant's opening statement.

Plaintiff further argues that defendant's opening statement

was improper because it referred to plaintiff tripping off a bus

and a subsequent lawsuit alleging the same damages to plaintiff's

right arm, but that none of this was introduced into evidence or

substantiated by any medical evidence.  (Doc. #223, p. 16.)   The

first reference to plaintiff's history of three prior falls,

however, was in *plaintiff's* opening statement. (Doc. #217, p. 19.)
Plaintiff is simply mistaken in her belief that there was no
evidence presented during the trial about this matter and that
there was no medical evidence. Plaintiff testified to these
events, and submitted medical bills and records as to her current
and prior injuries. (Plaintiff's Exhs. 3, J, O, P, Q, R, S, T, U,
Y, AA.) No further substantiation by medical evidence was needed,
since the prior falls were not disputed. The Court finds no error
in this aspect of defendant's opening statement.

Plaintiff argues that defendant erred by stating in opening
statement that this incident was not the first time police had been
to plaintiff's residence for a 911 call. Plaintiff asserts this
was in violation of the Court's summary judgment order finding the
false arrest claim was gone and that none of the evidence from the
arrest would be admitted as evidence at trial, and that defendant's
counsel failed to produce other 911 calls in pretrial discovery.
Plaintiff also asserts that the Court improperly overruled her
objection to such testimony at trial. (Doc. #223, p. 12.)

Neither the Court's Opinion and Order (Doc. #195) on summary
judgment nor the Order (Doc. #194) on the motions *in limine* stated
that none of the evidence from the arrest would be admitted as
evidence at trial. As noted above, it was plaintiff's opening
statement that first mentioned the 911 call in this case and the
facts of plaintiff's arrest. Additionally, plaintiff's opening

stated that plaintiff would testify she had never been arrested before the evening of this incident, and "had never had incidents or problems with police." (Doc. #217, p. 4.)  In his opening statement, defendant's attorney listed a number of plaintiff's inconsistent statements or omissions as reasons the jury should not find plaintiff credible, including that police had been called to her home both before and after the incident at issue. The evidence at trial supported this argument.  Defendant's counsel did not state that there were other 911 calls, but stated: "This is not the first time that the police had responded to 1121 Rose Avenue, where Miss Rosa lives.  They had been called to Miss Rosa's home both prior to and subsequent to April 30th, 2004, the date of this incident." (Doc. #218, p. 3.)  Plaintiff has not demonstrated any discovery violation.

Plaintiff also argues she is entitled to a new trial because the Court erred in admitting irrelevant and prejudicial evidence concerning plaintiff while excluding certain testimony concerning defendant.  The admission of evidence is within the sound discretion of the trial court. Middlebrooks v. Hillcrest Foods, Inc., 256 F.3d 1241, 1248 (11th Cir. 2001).  The admission of the background of the arrest and events in the booking room is certainly well within that discretion.  The evidence is a far cry from that which plaintiff had sought to admit concerning defendant's unrelated activities.

**(2) Defendant's Closing Argument:**

The Court instructed the jury prior to closing arguments that the attorneys would be recalling the testimony and the evidence in the case, and would not intentionally mislead the jury, and that the jury must follow its own recollection of the evidence. (Doc. #222, pp. 3-4.)  The Court also told the jury that the final arguments were not to be construed as evidence or as the instructions on the law. (<u>Id.</u> at p. 4.)  During closing argument, plaintiff's counsel objected exactly once, to a statement which does not form a basis for the new trial motion. (Doc. #222, pp. 55-56.)

Plaintiff asserts that defendant improperly argued that plaintiff had no First Amendment right to free speech in a booking room to refuse to obey a lawful police order, thereby severely tainting the jury by encouraging the jury to disregard the law, as set forth in the Court's jury instructions. (Doc. #223, pp. 4-5.) The Court disagrees.

Defendant's counsel made similar arguments at several points in his closing argument, all without objection.  In discussing what is reasonable for an officer in a booking room, defendant's counsel made reference to obeying the Court's rulings during closing argument, stating "I have to listen to him.  There's rules.  When you're under arrest, there are rules.  Whether you like it or you don't like, there are rules.  You don't have freedom of speech.  If you're standing in the booking room, and I tell to you do

-11-

something, and you don't do it, I have a right, as a police
officer, to put my hands on you and get it done."  (Doc. #222, p.
41.)  Later, defendant's counsel stated: "When you say -- you know,
just like you don't say, in a crowded theater, "Fire," you don't
tell a police officer, in a booking room, I'm not going to do that.
You don't have a right.  You don't have free speech to stand up in
a crowded theater and say, "Fire."  And you don't have a right to
free speech in a booking room to refuse to obey a lawful police
order."  (Doc. #222, p. 45.)  Later, counsel stated:  "When you're
under arrest, you're an arrestee, detainee, prisoner, you give up
those rights.  You don't have free speech.  You can't go into that
cell and dictate policy.  You can't go in there and say I'll take
my jewelry off when I'm good and ready.  I'll take it off myself."
(Doc. #222, p. 57.)

     After the closing arguments, the Court fully and properly
instructed the jury as to the elements of the claims, including
plaintiff's First Amendment rights. (Doc. #214, pp. 10-12.)  The
Court instructed the jury that "anything the lawyers say is not
evidence in the case.  And, except for my instructions to you on
the law, you should disregard anything I may have said during the
trial in arriving at your decision concerning the facts.  It is
your own recollection and interpretation of the evidence that
controls."  (Doc. #214, p. 2.)  The jury found that no excessive
force was used under all of the asserted constitutional rights.
The Court finds that even if defendant misstated the law during his

closing argument, plaintiff has not shown that a new trial is warranted under the circumstances of this case.

Plaintiff next argues that defendant's closing argument was improper because it made reference to events and circumstances occurring prior to her arrest, in violation of the Court's preliminary rulings limiting such evidence and the summary judgment order.  These include a reference to plaintiff being handcuffed in the car, the alleged domestic violence incident, prior lawsuits, and "others of its kind."  Plaintiff also argues that defendant's theory that plaintiff had fractured her arm by striking the car with a screwdriver during the domestic violence incident leading to her arrest was unsupported by any medical or expert evidence. Plaintiff also argues that defendant made references to her treatment with Ruth Cooper for suicidal tendencies, and suggested that the jury "look at records" despite the lack of records being admitted into evidence.  (Doc. #223, pp. 8-10, 15-16.) Additionally, plaintiff alleges that defendant read from summaries of medical records which were never admitted in trial.  (Doc. #223, p. 15.)

As noted earlier, nothing in the Court's Opinion and Order (Doc. #195) ruling on the summary judgment motions purported to address the admissibility of evidence at trial.  The Court did issue an Order (Doc. #194) ruling on various motions *in limine*, but this Order did not preclude admission of the screwdriver or arrest events.  Defense counsel's argument that plaintiff may have

fractured her arm during her previous attack on the car with the screwdriver (Doc. #222, pp. 38-39) was based on the evidence in the record and did not require medical or expert corroboration. Extensive medical records were admitted as evidence, Plaintiff's Exhibits 3, J, O, P, Q, R, S, T, U, Y, AA.  Indeed, plaintiff's counsel referenced the medical records in her initial closing argument, Doc. #222, p. 28, including the Ruth Cooper Center outpatient counseling and group therapy, id. at p. 9.  There is no indication defendant read from summaries not admitted or directed the jury to look at records which had not been admitted.

Plaintiff also claims that references to her as being a "professional litigant" in both opening statement and closing argument were improperly allowed.  Specifically, plaintiff cites references to her worker's compensation from Publix, an Amtrak lawsuit, and a fall in New Jersey, both thirty years previously. This was especially unfair, plaintiff argues, because the Court excluded evidence of defendant's prior bad acts and his divorce. (Doc. #223, pp. 11-12.)  Plaintiff also asserts that defendant argued in violation of the collateral source rule by referring to her receipt of social security, medicare and medicaid, and referring to her as someone who has "hit the lottery" through such activities.  (Id. at pp. 14-15.)

The first reference to plaintiff's litigation history was brought up in plaintiff's opening statement.  Plaintiff's counsel stated:

> They're going to bring up other things.  Miss Rosa
> had a fall, where she hurt her shoulder, six or eight
> years ago, and she sued somebody to recover money.  As we
> know, sometimes, if you don't sue, you can't recover
> money.  Because nobody will just pay you.  You still have
> to prove your case.
> And she had another fall.  That was in Andrews
> Medicare case.  She had another fall at work, where she
> hurt her knee.  We are not claiming she had her knee
> hurt, so it's not really relevant whether Miss Rosa was
> slipping at Publix, while she was working, and had a
> worker's comp injury.

(Doc. #217, p. 19.)  In his opening statement, defendant's attorney listed a number of examples which he asserted undermined plaintiff's credibility because of prior misstatements or omissions, concluding "Mrs. Rosa is a professional litigant." (Doc. #218, p. 4.)

The first reference in closing argument to plaintiff as a professional litigant came in the beginning of *plaintiff's* initial closing argument.  (Doc. #222, p. 7.)  Plaintiff's counsel listed the purported factual basis for such a characterization and the timeline for such prior events, arguing that plaintiff was not a professional litigant and, in any event, those events did not matter when considering the events in the booking room.  (Doc. #222, pp. 7-10.)  In his closing argument, defendant's attorney discussed these past activities in the context of plaintiff's credibility, or more precisely, lack of credibility.

The first reference to Medicaid insurance was by plaintiff's counsel in her initial closing argument.  (Doc. #222, p. 26.) Defendant's attorney responded in closing by confirming some of the

argument made by plaintiff concerning past medical bills, and noted that future medical bills would also be paid by Medicaid because plaintiff was on total permanent disability. (Doc. #222, p. 53.) This statement was true, and not a violation of the applicable exception to the collateral source rule. <u>Peterson v. Willie</u>, 81 F.3d 1033, 1039 (11th Cir. 1996).

Plaintiff also argues that in both opening statement (once) and closing argument (four times) defendant used the word "prisoner" (instead of "arrestee") to refer to a witness who had been arrested and was being detained in the booking room during the events at issue. (Doc. #223, pp. 12-13.) No objection was raised on any occasion.

In his opening statement, defendant's attorney stated that Mrs. Dorsey was in the booking room because she "was under arrest. . . . But she's in the jail, she's a prisoner, herself." (Doc. #218, pp. 6-7.) Defendant's counsel stated in closing argument in connection with the need to have plaintiff take off her jewelry that "He's got people backed up behind him. He's got other prisoners in that room. He wants to get back on the road. Put her in, get back on the road, get back to work." (Doc. #222, p. 41.) In discussing plaintiff's use of force expert, defendant's counsel stated: "I doubt he's ever booked a prisoner in a booking room." (<u>Id.</u> at p. 45.) Counsel then refers to persons such as plaintiff as "a suspect." (<u>Id.</u> at p. 47.) Finally, defendant's counsel stated: "When you're under arrest, you're an arrestee, detainee,

prisoner, you give up those rights." (Doc. #222, p. 57.) Whatever the technical status of Mrs. Dorsey and plaintiff, the Court finds no error in the opening statement or closing argument of defendant's attorney. Even the Eleventh Circuit has used "prisoner" and "detainee" interchangeably. <u>Gish v. Thomas</u>, ___ F.3d ___, 2008 WL 304745 (11th Cir. Feb. 5, 2008).

Plaintiff argues that defendant misstated the law in closing argument by stating that to award plaintiff $1.5 million the jury would "have to find that [defendant] actually acted in bad faith, willfully and wantonly, to break her arm." (Doc. #223, p. 13.) No objection was made to this argument. (Doc. #222, pp. 53-54.) Even if this was a misstatement of the law, there was no reversible error. The Court followed the arguments with proper jury instructions, and the jury never was required to reach the issue of damages.

Plaintiff asserts that defendant vouched for his expert witness in closing argument, played upon the prejudice of "locals" by stating that her expert had been imported from Tennessee, and implied plaintiff could not prove her case unless she paid police officers to testify as experts. Additionally, defendant vouched for all police, and stated his personal beliefs on several occasions. (Doc. #223, pp. 13-14.)

Defendant's attorney certainly referred to plaintiff's expert as being from "the great state of Tennessee." (Doc. #222, pp. 42, 45, 52.) After contrasting the qualifications of his expert with

plaintiff's expert, defendant's counsel stated "I didn't have to go all the way to Tennessee to find my expert.  I went to Bonita Springs."  (Doc. #222, pp. 46-47.)  Defendant's counsel also pointed out that he had called a number of officers who testified they would have acted in the same way, and contrasted this with plaintiff's failure to call any officer "[a]nd there's thousands of police officers in this area, and if you paid them enough, probably get 900 of them to say, oh, that was excessive force."  (Doc. #222, p. 49.)  While this undermines plaintiff's argument that defendant vouched for all police officers, and an objection may have been sustained if made, no objection was made and no reversible error has been shown.

In short, the Court finds that defendant's opening statement and closing argument were not improper or contrary to pretrial orders, and that they did not prejudice the substantial rights of plaintiff.

## C.  Plaintiff's Closing Argument:

Plaintiff argues that the Court improperly sustained objections made to portions of her closing argument.  These include plaintiff's statements that referred to: the flag and the Constitution; referred to the Revolutionary War; Benjamin Franklin and our Founding Fathers; and the Bible and the obligation to tell the truth.  (Doc. #223, p. 14.)

As noted earlier, the Court has an obligation to control argument by counsel.  While the Court initially overruled an

objection to plaintiff's reference to 200 years of history of jury trials (Doc. #222, pp. 5-6; "I'll allow some."), plaintiff's counsel exceeded the permissible limits of argument.   In her initial closing argument, plaintiff's counsel referred to the O.J. Simpson case as an example of why the jury should not be concerned about how defendant would pay a large award.  (Doc. #222, p. 34.) In rebuttal closing argument, plaintiff's counsel stated without objection "We are not here just representing Miss Rosa, we are representing that flag and our constitution." (Doc. #222, p. 62.) Plaintiff's counsel then stated that "everything [defendant's attorney] has said has been false, and is an insult to that flag, and an insult to the Constitution," to which the Court sustained an objection.   (Doc. #222, p. 63.)   Plaintiff's counsel then referenced the constitutional underpinnings of the claims, and stated "Our founding fathers fought a Revolutionary War to --," to which an objection was sustained.  (Doc. #222, p. 63.)   Later, plaintiff's counsel came back to the founding fathers, stating in part "Mr. Ben Franklin, 81 years old, going in there to fight for little people, first graders, second graders, for this Constitution." (Doc. #222, p. 66.)  An objection to Ben Franklin was sustained.  (Doc. #222, p. 67.)  The Court also sustained an objection when plaintiff's counsel referred to defendant's counsel by saying "He has many degrees, all kinds of training, he's a lawyer.  And he's trying to take advantage of a little bilingual seventh grade --."   (Doc. #222, pp. 67-68.)   The Court also

-19-

sustained an objection when plaintiff's counsel stated "This is America.  This is not Nazi Germany, where you had no rights --" (Doc. #222, p. 68.) In the Court's view, all these statements in rebuttal closing argument were designed to do just what the law forbids, that is to "impair gravely" the calm and dispassionate consideration of the case by a jury.

### IV.

Defendant moves to strike plaintiff's Supplement (Doc. #226) as an untimely motion for judgment as a matter of law under Rule 50(b) (required to be filed no later than ten days after entry of judgment) and an untimely for a new trial under Rule 59(b) (same)). The Supplement, however, raises no new issues and is essentially an unauthorized reply to defendant's Memorandum of Law in Opposition to the motion for judgment as a matter of law or new trial.  M.D. Fla. L.R. 3.01(c).  The Court will deny the motion to strike.

Accordingly, it is now

**ORDERED**:

1. Plaintiff's Renewed Motion for Judgment as a Matter of Law Pursuant to Rule 50(b) and/or Motion for New Trial Pursuant to Rule 59 (Doc. #223) is **DENIED.**

2. Motion to Strike Plaintiff's Supplement (Doc. #228) is **DENIED.**

**DONE AND ORDERED** at Fort Myers, Florida, this ___12th___ day of February, 2008.

_John E. Steele_
JOHN E. STEELE
United States District Judge

Copies:
USCA
Counsel of record